

Fill in this information to identify your case:

Debtor 1: **TESSA** (First Name) **ARIANNA** (Middle Name) **LIT** (Last Name)

Debtor 2 (Spouse, if filing): _____ (First Name) _____ (Middle Name) _____ (Last Name)

United States Bankruptcy Court for the: District of Arizona

Case number (If known): 2:18-bk-09274-MCW

# Official Form 427
## Cover Sheet for Reaffirmation Agreement    12/15

Anyone who is a party to a reaffirmation agreement may fill out and file this form. Fill it out completely, attach it to the reaffirmation agreement, and file the documents within the time set under Bankruptcy Rule 4008.

### Part 1: Explain the Repayment Terms of the Reaffirmation Agreement

**1. Who is the creditor?**
HLS of Nevada, LLC dba Nevada West Financial
Name of the creditor

**2. How much is the debt?**
On the date that the bankruptcy case is filed  $ 8,526.29
To be paid under the reaffirmation agreement $ 8,267.83
$ 271.18 per month for 42 months (if fixed interest rate)

**3. What is the Annual Percentage Rate (APR) of interest? (See Bankruptcy Code § 524(k)(3)(E).)**
Before the bankruptcy case was filed  24.00 %
Under the reaffirmation agreement  24.00 %  ☑ Fixed rate   ☐ Adjustable rate

**4. Does collateral secure the debt?**
☐ No
☑ Yes. Describe the collateral. 2015 NISSAN SENTRA
Current market value  $ 8,267.83

**5. Does the creditor assert that the debt is nondischargeable?**
☑ No
☐ Yes. Attach an explanation of the nature of the debt and the basis for contending that the debt is nondischargeable.

**6. Using information from Schedule I: Your Income (Official Form 106I) and Schedule J: Your Expenses (Official Form 106J), fill in the amounts.**

Income and expenses reported on Schedules I and J:

6a. Combined monthly income from line 12 of Schedule I  $ 1,806.00

6b. Monthly expenses from line 22c of Schedule J  – $ 1,820.00

6c. Monthly payments on all reaffirmed debts not listed on Schedule J  – $ 0.00

6d. Scheduled net monthly income  $ -14.00
Subtract lines 6b and 6c from 6a.
If the total is less than 0, put the number in brackets.

Income and expenses stated on the reaffirmation agreement:

6e. Monthly income from all sources after payroll deductions  $ 1,806.00

6f. Monthly expenses  – $ 1,820.00

6g. Monthly payments on all reaffirmed debts not included in monthly expenses  – $ 0.00

6h. Present net monthly income  $ -14.00
Subtract lines 6f and 6g from 6e.
If the total is less than 0, put the number in brackets.

Debtor 1  TESSA ARIANNA LIET    Case number (if known) 2:18-bk-09274-MCW

7. Are the income amounts on lines 6a and 6e different?
   ☑ No
   ☐ Yes. Explain why they are different and complete line 10. _____

8. Are the expense amounts on lines 6b and 6f different?
   ☑ No
   ☐ Yes. Explain why they are different and complete line 10. _____

9. Is the net monthly income in line 6h less than 0?
   ☐ No
   ☑ Yes. A presumption of hardship arises (unless the creditor is a credit union).
   Explain how the debtor will make monthly payments on the reaffirmed debt and pay other living expenses.
   Complete line 10.

   I, the debtor, plan to reduce my expenses (food & personal care) to ensure I will make the payment on time every month

10. Debtor's certification about lines 7-9

    I certify that each explanation on lines 7-9 is true and correct.

    If any answer on lines 7-9 is Yes, the debtor must sign here.

    × _Tessa L_____     × _____
    Signature of Debtor 1                    Signature of Debtor 2 (Spouse Only in a Joint Case)

    If all the answers on lines 7-9 are No, go to line 11.

11. Did an attorney represent the debtor in negotiating the reaffirmation agreement?
    ☑ No
    ☐ Yes. Has the attorney executed a declaration or an affidavit to support the reaffirmation agreement?
       ☐ No
       ☐ Yes

## Part 2:  Sign Here

Whoever fills out this form must sign here.

I certify that the attached agreement is a true and correct copy of the reaffirmation agreement between the parties identified on this *Cover Sheet for Reaffirmation Agreement*.

× _____        Date 10/10/2018
  Signature                             MM / DD / YYYY

  Mathew Kane
  Printed Name

  Check one:
  ☐ Debtor or Debtor's Attorney
  ☑ Creditor or Creditor's Attorney

Check one.
☒ **Presumption of Undue Hardship**
☐ **No Presumption of Undue Hardship**
*See Debtor's Statement in Support of Reaffirmation, Part II below, to determine which box to check.*

# UNITED STATES BANKRUPTCY COURT

District of Arizona

In re TESSA ARIANNA LIT,
*Debtor*

Case No. 2:18-bk-09274-mc

Chapter 7

## REAFFIRMATION DOCUMENTS

**Name of Creditor:** HLS of Nevada LLC dba Nevada West Financial

☐ Check this box if Creditor is a Credit Union

### PART I. REAFFIRMATION AGREEMENT

**Reaffirming a debt is a serious financial decision. Before entering into this Reaffirmation Agreement, you must review the important disclosures, instructions, and definitions found in Part V of this form.**

A. Brief description of the original agreement being reaffirmed: auto loan

*For example, auto loan*

B. **AMOUNT REAFFIRMED**: $ 8,267.83

The Amount Reaffirmed is the entire amount that you are agreeing to pay. This may include unpaid principal, interest, and fees and costs (if any) arising on or before 10/10/2018, which is the date of the Disclosure Statement portion of this form (Part V).

*See the definition of "Amount Reaffirmed" in Part V, Section C below.*

C. The **ANNUAL PERCENTAGE RATE** applicable to the Amount Reaffirmed is 24.0000 %.

*See definition of "Annual Percentage Rate" in Part V, Section C below.*

This is a *(check one)* ☑ Fixed rate    ☐ Variable rate

If the loan has a variable rate, the future interest rate may increase or decrease from the Annual Percentage Rate disclosed here.

D. Reaffirmation Agreement Repayment Terms *(check and complete one)*:

☑ $ 271.18 per month for 42 months starting on 11/01/2018 .

☐ Describe repayment terms, including whether future payment amount(s) may be different from the initial payment amount.

E. Describe the collateral, if any, securing the debt:

Description: 2015 NISSAN SENTRA
Current Market Value $ 8,267.83

F. Did the debt that is being reaffirmed arise from the purchase of the collateral described above?

☑ Yes. What was the purchase price for the collateral? $ 10,800.35

☐ No. What was the amount of the original loan? $ 

G. Specify the changes made by this Reaffirmation Agreement to the most recent credit terms on the reaffirmed debt and any related agreement:

|  | Terms as of the Date of Bankruptcy | Terms After Reaffirmation |
|---|---|---|
| Balance due (including fees and costs) | $ 8,526.29 | $ 8,267.83 |
| Annual Percentage Rate | 24.0000 % | 24.0000 % |
| Monthly Payment | $ 271.18 | $ 271.18 |

H. ☐ Check this box if the creditor is agreeing to provide you with additional future credit in connection with this Reaffirmation Agreement. Describe the credit limit, the Annual Percentage Rate that applies to future credit and any other terms on future purchases and advances using such credit:

## PART II.   DEBTOR'S STATEMENT IN SUPPORT OF REAFFIRMATION AGREEMENT

A. Were you represented by an attorney during the course of negotiating this agreement?

Check one.   ☐ Yes   ☑ No

B. Is the creditor a credit union?

Check one.   ☐ Yes   ☑ No

Form 2400A, Reaffirmation Documents

C. If your answer to EITHER question A. or B. above is "No," complete 1. and 2. below.

1. Your present monthly income and expenses are:

   a. Monthly income from all sources after payroll deductions (take-home pay plus any other income)     $   1,806.00

   b. Monthly expenses (including all reaffirmed debts except this one)     $   1,548.82

   c. Amount available to pay this reaffirmed debt (subtract b. from a.)     $   257.18

   d. Amount of monthly payment required for this reaffirmed debt     $   271.18

   *If the monthly payment on this reaffirmed debt (line d.) **is greater than** the amount you have available to pay this reaffirmed debt (line c.), you must check the box at the top of page one that says "Presumption of Undue Hardship." Otherwise, you must check the box at the top of page one that says "No Presumption of Undue Hardship."*

2. You believe that this reaffirmation agreement will not impose an undue hardship on you or your dependents because:

   Check one of the two statements below, if applicable:

   ☐ You can afford to make the payments on the reaffirmed debt because your monthly income is greater than your monthly expenses even after you include in your expenses the monthly payments on all debts you are reaffirming, including this one.

   ☑ You can afford to make the payments on the reaffirmed debt even though your monthly income is less than your monthly expenses after you include in your expenses the monthly payments on all debts you are reaffirming, including this one, because: *I have adjusted my budget to reduce the amount of money spent on personal care and food. I will continuously adjust my income vs. expenses to ensure this reaffirmed debt and other bills are paid on time every month.*

   Use an additional page if needed for a full explanation.

D. If your answers to BOTH questions A. and B. above were "Yes," check the following statement, if applicable:

   ☐ You believe this Reaffirmation Agreement is in your financial interest and you can afford to make the payments on the reaffirmed debt.

*Also, check the box at the top of page one that says "No Presumption of Undue Hardship."*

## PART III. CERTIFICATION BY DEBTOR(S) AND SIGNATURES OF PARTIES

I hereby certify that:

(1) I agree to reaffirm the debt described above.

(2) Before signing this Reaffirmation Agreement, I read the terms disclosed in this Reaffirmation Agreement (Part I) and the Disclosure Statement, Instructions and Definitions included in Part V below;

(3) The Debtor's Statement in Support of Reaffirmation Agreement (Part II above) is true and complete;

(4) I am entering into this agreement voluntarily and am fully informed of my rights and responsibilities; and

(5) I have received a copy of this completed and signed Reaffirmation Documents form.

SIGNATURE(S) (If this is a joint Reaffirmation Agreement, both debtors must sign.):

Date _10/15/2018_ Signature _Tessa A Lee_
                              *Debtor*

Date _____ Signature _____
                              *Joint Debtor, if any*

**Reaffirmation Agreement Terms Accepted by Creditor:**

Creditor _Nevada West Financial_     _P.O. Box 94703, Las Vegas, NV 89193_
           *Print Name*                        *Address*

_Mathew Kane_                _[signature]_              _10/10/2018_
*Print Name of Representative*   *Signature*              *Date*

## PART IV. CERTIFICATION BY DEBTOR'S ATTORNEY (IF ANY)

*To be filed only if the attorney represented the debtor during the course of negotiating this agreement.*

I hereby certify that: (1) this agreement represents a fully informed and voluntary agreement by the debtor; (2) this agreement does not impose an undue hardship on the debtor or any dependent of the debtor; and (3) I have fully advised the debtor of the legal effect and consequences of this agreement and any default under this agreement.

☐ A presumption of undue hardship has been established with respect to this agreement. In my opinion, however, the debtor is able to make the required payment.

*Check box, if the presumption of undue hardship box is checked on page 1 and the creditor is not a Credit Union.*

Date _____ Signature of Debtor's Attorney_____

               Print Name of Debtor's Attorney _____

# Retail Installment Contract and Security Agreement

| Name and Address | Buyer(s) Name(s) and Address(es) | Summary | |
|---|---|---|---|
| ⏵ Auto Sales LLC<br>⏵366 W Broadway Rd<br>Mesa, AZ 85202 | Tessa Lit<br>8962 W State Ave<br>Glendale, AZ 85305 | No.<br>Date | 1509<br>3/11/2016 |

☐ Business, commercial or agricultural purpose Contract.

### Truth-In-Lending Disclosure

| Annual Percentage Rate<br>The cost of your credit as a yearly rate. | Finance Charge<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid when you have made all scheduled payments. | Total Sale Price<br>The total cost of your purchase on credit, including your down payment of $ 5000.00 |
|---|---|---|---|---|
| 24.00 % | $ 9224.61 | $ 10300.35 | $ 19524.96 | $ 24524.96 |

**Payment Schedule.** Your payment schedule is:

| No. of Payments | Amount of Payments | When Payments are Due |
|---|---|---|
|  | $ |  |
| 72 | $ 271.18 | Monthly, Beginning 04/10/16 |
|  | $ |  |

**Security.** You are giving us a security interest in the Property purchased.

**Late Charge.** If all or any portion of a payment is not paid within 10 days of its due date, you will be charged a late charge of 5% of the unpaid amount of the payment due.

**Prepayment.** If you pay off this Contract early, you will not have to pay a penalty.

**Contract Provisions.** You can see the terms of this Contract for any additional information about nonpayment, default, any required repayment before the scheduled date, and prepayment refunds and penalties.

### Arizona Used Motor Vehicle Warranty

This section applies to used vehicles only. **The Seller hereby warrants that this Vehicle will be fit for the ordinary purposes for which the Vehicle is used for 15 days or 500 miles after delivery, whichever is earlier, except with regard to particular defects disclosed on the first page of this agreement. You (the purchaser) will have to pay $25.00 for each of the first two repairs if the warranty is violated.**

Attention Purchaser. Sign here <u>only</u> if the dealer told you that this Vehicle has the following problem(s) and that you agree to buy the Vehicle on those terms:

1. _____
2. _____
3. _____

X _____ 3/11/2016
By: Tessa Lit                                                    Date

By: _____ Date

By: _____ Date

Retail Installment Contract-AZ Not for use in transactions secured by a dwelling.
Bankers Systems™
Wolters Kluwer Financial Services © 1995, 2010

RSSIMVLFAZAZ 6/8/2012
Page 1 of 6

Case 2:18-bk-09274-MCW   Doc 22   Filed 10/16/18   Entered 10/17/18 09:23:48   Desc
Main Document    Page 7 of 12

### Warranties

Unless the Seller makes a written warranty or enters into a service contract within 90 days from the date of this contract, the Seller makes no warranties on the Vehicle, except as described above for used vehicles. Making no warranties means that the Seller is selling the Vehicle as is - not expressly warranted or guaranteed and without implied warranties of merchantability (except as described above) or fitness for a particular purpose. This provision does not affect any warranties covering the Vehicle that the Vehicle manufacturer may provide.

### Description of Property

| Year | Make | Model | Style | Vehicle Identification Number | Odometer Mileage |
|---|---|---|---|---|---|
| 2015 | Nissan | Sentra | Sedan | 3N1AB7AP6FY260245 | 13865 |

- [ ] New
- [X] Used
- [ ] Demo

Other:

### Description of Trade-In

### Conditional Delivery

- [ ] **Conditional Delivery.** If checked, you agree that the following agreement regarding securing financing ("*Agreement*") applies: _____. The Agreement is part of this Contract. The Agreement will no longer control after the assignment is accepted. If there are any conflicts between the terms of the Agreement and the Contract, the terms of this Contract will apply.

### Sales Agreement

**Payment.** You promise to pay us the principal amount of $ 10300.35 plus finance charges accruing on the unpaid balance at the rate of 24.00 % per year from the date of this Contract until maturity. Finance charges accrue on a 365 day basis. After maturity, or after you default and we demand payment, we will charge finance charges on the unpaid balance at 24.00 % per year. You agree to pay this Contract according to the payment schedule and late charge provisions shown in the *Truth-In-Lending Disclosure*. You also agree to pay any additional amounts according to the terms and conditions of this Contract.

**Down Payment.** You also agree to pay or apply to the Cash Price, on or before the date of this Contract, any cash, rebate and net trade-in value described in the *Itemization of Amount Financed*.

- [ ] You agree to make deferred down payments as set forth in your Payment Schedule.

*[This area intentionally left blank.]*

### Itemization of Amount Financed

| | | |
|---|---|---|
| a. **Cash Price** of Vehicle, etc. (incl. sales tax of $ 1086.35 ) | $ | 14581.35 |
| b. Trade-in allowance | $ | N/A |
| c. Less: Amount owing, paid to (includes k): | $ | N/A |
| d. Net trade-in (b-c; if negative, enter $0 here and enter the amount on line k) | $ | N/A |
| e. Cash payment | $ | 5000.00 |
| f. Manufacturer's rebate | $ | N/A |
| g. Deferred down payment | $ | N/A |
| h. Other down payment (describe) | $ | N/A |
| i. **Down Payment** (d+e+f+g+h) | $ | 5000.00 |
| j. **Unpaid balance of Cash Price** (a-i) | $ | 9581.35 |
| k. Financed trade-in balance (see line d) | $ | N/A |
| l. Paid to public officials, including filing fees | $ | 220.00 |
| m. Insurance premiums paid to insurance company(ies) | $ | N/A |
| n. Service Contract, paid to: | $ | N/A |
| o. Go Auto Sales LLC for Doc Fee | $ | 499.00 |
| p. | $ | N/A |
| q. | $ | N/A |
| r. | $ | N/A |
| s. | $ | N/A |
| t. | $ | N/A |
| u. | $ | N/A |
| v. **Total Other Charges/Amts Paid** (k thru u) | $ | 719.00 |
| w. **Prepaid Finance Charge** | $ | N/A |
| x. **Amount Financed** (j+v-w) | $ | 10300.35 |

We may retain or receive a portion of any amounts paid to others.

**Broker Fee.** [ ] If this box is checked, this Contract is subject to a broker fee paid by the Seller to _____.

Retail Installment Contract-AZ Not for use in transactions secured by a dwelling.
Bankers Systems™
Wolters Kluwer Financial Services © 1995, 2010

X _____ RSSIMVLFAZAZ 6/8/2012
Page 2 of 6

Case 2:18-bk-09274-MCW    Doc 22    Filed 10/16/18    Entered 10/17/18 09:23:48    Desc
Main Document    Page 8 of 12

## Insurance Disclosures

**Credit Insurance.** Credit life and credit disability (accident and health) are not required to obtain credit and are not a factor in the credit decision. We will not provide them unless you sign and agree to pay the additional premium. If you want such insurance, we will obtain it for you (if you qualify for coverage). We are quoting below only the coverages you have chosen to purchase.

**Credit Life**
☐ Single ☐ Joint ☐ None
Premium $ N/A    Term _____
Insured _____

**Credit Disability**
☐ Single ☐ Joint ☐ None
Premium $ N/A    Term _____
Insured _____

Your signature below means you want (only) the insurance coverage(s) quoted above. If "None" is checked, you have declined the coverage we offered.

By: _____ DOB _____

By: _____ DOB _____

By: _____ DOB _____

**Property Insurance.** You must insure the Property. You may purchase or provide the insurance through any insurance company reasonably acceptable to us. The collision coverage deductible may not exceed $ N/A . If you get insurance from or through us you will pay $ N/A for _____ of coverage.

This premium is calculated as follows:
☒ $ N/A    Deductible, Collision Cov. $ N/A
☒ $ N/A    Deductible, Comprehensive $ N/A
☐ Fire-Theft and Combined Additional Cov. $ N/A
☐ _____ $ N/A

☐ **Single-Interest Insurance.** You must purchase single-interest insurance as part of this sale transaction. You may purchase the coverage from a company of your choice, reasonably acceptable to us. If you buy the coverage from or through us, you will pay $ N/A for _____ of coverage.

## Rejection of Arbitration

Checking the following box will not affect the terms under which we will finance and sell the Property or any of the terms of this Contract, except that the arbitration provision will not be a part of this Contract:

☐ You reject the arbitration provision of this Contract.

## Additional Protections

You may buy any of the following voluntary protection plans. They are not required to obtain credit, are not a factor in the credit decision, and are not a factor in the terms of the credit or the related sale of the Vehicle. The voluntary protections will not be provided unless you sign and agree to pay the additional cost.

Your signature below means that you want the described item and that you have received and reviewed a copy of the contract(s) for the product(s). If no coverage or charge is given for an item, you have declined any such coverage we offered.

☐ **Service Contract**
Term _____
Price $ N/A
Coverage _____

☐ **Gap Waiver or Gap Coverage**
Term _____
Price $ N/A
Coverage _____

☐ _____
Term _____
Price $ _____
Coverage _____

3/11/2016
By: _____ Date

By: _____ Date

By: _____ Date

## Additional Terms of the Sales Agreement

**Definitions.** *"Contract"* refers to this Retail Installment Contract and Security Agreement. The pronouns *"you"* and *"your"* refer to each Buyer signing this Contract, and any guarantors, jointly and individually. The pronouns *"we"*, *"us"* and *"our"* refer to the Seller and any entity to which it may transfer this Contract. *"Vehicle"* means each motor vehicle described in the *Description of Property* section. *"Property"* means the Vehicle and all other property described in the *Description of Property* and *Additional Protections* sections.

**Purchase of Property.** You agree to purchase the Property from us, subject to the terms and conditions of this Contract. Seller will not make any repairs or additions to the Vehicle except as noted in the *Description of Property* section.

You have been given the opportunity to purchase the Property and described services for the Cash Price or the Total Sale Price. The *"Total Sale Price"* is the total price of the Property if you buy it over time.

**General Terms.** The Total Sale Price shown in the *Truth-In-Lending Disclosure* assumes that all payments will be made as scheduled. The actual amount you will pay will be more if you pay late and less if you pay early.

We do not intend to charge or collect, and you do not agree to pay, any finance charge or fee that is more than the maximum amount permitted for this sale by state or federal law. If you pay a finance charge or fee that exceeds that maximum amount, we will first apply the excess amount to reduce the principal balance and, when the principal has been paid in full, refund any remaining amount to you.

You understand and agree that some payments to third parties as a part of this Contract may involve money retained by us or paid back to us as commissions or other remuneration.

Retail Installment Contract-AZ Not for use in transactions secured by a dwelling.
Bankers Systems™
Wolters Kluwer Financial Services © 1995, 2010

RSSIMVLFAZAZ 6/8/2012
Page 3 of 6

Case 2:18-bk-09274-MCW    Doc 22    Filed 10/16/18    Entered 10/17/18 09:23:48    Desc
Main Document    Page 9 of 12

You agree that the Property will not be used as a dwelling.

**Prepayment.** You may prepay this Contract in full or in part at any time without penalty. Any partial prepayment will not excuse any later scheduled payments. If we get a refund of any unearned insurance premiums that you paid, you agree that we may subtract the refund from the amount you owe, unless otherwise provided by law.

**Returned Payment Charge.** If you make any payment required by this Contract that is returned or dishonored, you agree to pay a fee of not more than $25.00 plus any actual charges assessed by the financial institution of the holder, payee or assignee of the holder or payee as a result of the dishonored instrument.

**Governing Law and Interpretation.** This Contract is governed by the law of Arizona and applicable federal law and regulations.

If any section or provision of this Contract is not enforceable, the other terms will remain part of this Contract. You authorize us to correct any clerical error or omissions in this Contract or in any related document.

**Name and Location.** Your name and address set forth in this Contract are your exact legal name and your principal residence. You will provide us with at least 30 days notice before you change your name or principal residence.

**Telephone Monitoring and Calling.** From time to time you agree we may monitor and record telephone calls made or received by us or our agents regarding your account to assure the quality of our service. In order for us to service the account or to collect any amounts you may owe, and subject to applicable law, you agree that we may from time to time make calls and send text messages to you using prerecorded/artificial voice messages or through the use of an automatic dialing device at any telephone number you provide to us in connection with your account, including a mobile telephone number that could result in charges to you.

**Default.** You will be in default on this Contract if any one of the following occurs (except as prohibited by law):

- You fail to perform any obligation that you have undertaken in this Contract.
- We, in good faith, believe that you cannot, or will not, pay or perform the obligations you have agreed to in this Contract.

Unless prohibited by law, if you default, you agree to pay a reasonable amount for our cost of collection, our legal expenses and reasonable attorneys' fees if we refer this Contract to an attorney not a salaried employee of ours, and court costs.

If an event of default occurs as to any of you, we may exercise our remedies against any or all of you.

**Remedies.** If you are in default on this Contract, we have all of the remedies provided by law and this Contract. Those remedies include:

- We may require you to immediately pay us, subject to any refund required by law, the remaining unpaid balance of the amount financed, finance charges and all other agreed charges.
- We may pay taxes, assessments, or other liens or make repairs to the Property if you have not done so. We are not required to do so. You will repay us that amount immediately. That amount will earn finance charges from the date we pay it at the post-maturity rate described in the *Payment* section until paid in full.
- We may require you to make the Property available to us at a place we designate that is reasonably convenient to you and us.
- We may immediately take possession of the Property by legal process or self-help, but in doing so we may not breach the peace or unlawfully enter onto your premises.
- We may then sell the Property and apply what we receive as provided by law to our reasonable expenses of repossessing, storing, preparing for sale and selling the Property and then toward what you owe us.
- Except when prohibited by law, we may sue you for additional amounts if the proceeds of a sale do not pay all of the amounts you owe us.

By choosing any one or more of these remedies, we do not give up our right to later use another remedy. By deciding not to use any remedy, we do not give up our right to consider the event a default if it happens again.

You agree that if any notice is required to be given to you of an intended sale or transfer of the Property, notice is reasonable if mailed to your last known address, as reflected in our records, at least 10 days before the date of the intended sale or transfer (or such other period of time as is required by law).

You agree that we may take possession of personal property left in or on the Property securing this Contract and taken into possession as provided above. You may have a right to recover that property.

If the Property has an electronic tracking device, you agree that we may use the device to find the vehicle.

**NOTICE.** The following information applies if this Contract is secured by a motor vehicle, as that term may be defined by applicable Arizona law:

It is unlawful to fail to return a motor vehicle subject to a security interest within thirty days after receiving notice of default. Any notice of default we send you will be mailed to your address on this Contract. It is your responsibility to tell us your new address if it changes. Unlawful failure to return a motor vehicle subject to a security interest is a class 6 felony which for a first offense carries a maximum jail sentence of 1.5 years. The maximum jail sentence may be greater if there are aggravating circumstances or you have a prior criminal record. The court may also impose a fine of no more than $150,000.

**Obligations Independent.** Each person who signs this Contract agrees to pay this Contract according to its terms. This means the following:

- You must pay this Contract even if someone else has also signed it.
- We may release any co-buyer or guarantor and you will still be obligated to pay this Contract.
- We may release any security and you will still be obligated to pay this Contract.
- If we give up any of our rights, it will not affect your duty to pay this Contract.
- If we extend new credit or renew this Contract, it will not affect your duty to pay this Contract.

**Warranty.** In addition to the information provided in the *Arizona Used Motor Vehicle Warranty* section and the *Warranties* section of this Contract, warranty information may be provided to you separately.

## Security Agreement

**Security.** To secure your payment and performance under the terms of this Contract, you give us a security interest in the Vehicle, all accessions, attachments, accessories, and equipment placed in or on the Vehicle and in all other Property. You also assign to us and give us a security interest in proceeds and premium refunds of any insurance and service contracts purchased with this Contract.

**Duties Toward Property.** By giving us a security interest in the Property, you represent and agree to the following:

- You will defend our interests in the Property against claims made by anyone else. You will keep our claim to the Property ahead of the claim of anyone else. You will not do anything to change our interest in the Property.
- You will keep the Property in your possession and in good condition and repair. You will use the Property for its intended and lawful purposes.
- You agree not to remove the Property from the U.S. without our prior written consent.
- You will not attempt to sell the Property, transfer any rights in the Property, or grant another lien on the Property without our prior written consent.
- You will pay all taxes and assessments on the Property as they become due.
- You will notify us with reasonable promptness of any loss or damage to the Property.
- You will provide us reasonable access to the Property for the purpose of inspection. Our entry and inspection must be accomplished lawfully, and without breaching the peace.

**Agreement to Provide Insurance.** You agree to provide property insurance on the Property protecting against loss and physical damage and subject to a maximum deductible amount indicated in the *Insurance Disclosures* section, or as we will otherwise require. You will name us as loss payee on any such policy. Generally, the loss payee is the one to be paid the policy benefits in case of loss or damage to the Property. In the event of loss or damage to the Property, we may require additional security or assurances of payment before we allow insurance proceeds to be used to repair or replace the Property. You agree that if the insurance proceeds do not cover the amounts you still owe us, you will pay the difference. You will keep the insurance in full force and effect until this Contract is paid in full.

If you fail to obtain or maintain this insurance, or name us as loss payee, we may obtain insurance to protect our interest in the Property. This insurance may be written by a company other than one you would choose. It may be written at a rate higher than a rate you could obtain if you purchased the property insurance required by this Contract. We will add the premium for this insurance to the amount you owe us. Any amount we pay will be due immediately. This amount will earn finance charges from the date paid at the post-maturity rate described in the *Payment* section until paid in full.

**Gap Waiver or Gap Coverage.** In the event of theft or damage to the Vehicle that results in a total loss, there may be a gap between the amount due under the terms of the Contract and the proceeds of your insurance settlement and deductibles. You are liable for this difference. You have the option of purchasing Gap Waiver or Gap Coverage to cover the gap liability, subject to any conditions and exclusions in the Gap Waiver or Gap Coverage agreements.

## Arbitration Provision

**Arbitration Provision. PLEASE READ CAREFULLY!** By agreeing to this arbitration provision you are giving up your right to go to court for claims and disputes arising from this Contract:

Retail Installment Contract-AZ Not for use in transactions secured by a dwelling.
Bankers Systems™
Wolters Kluwer Financial Services © 1995, 2010

RSSIMVLFAZAZ 6/6/2012
Page 4 of 6

Case 2:18-bk-09274-MCW   Doc 22   Filed 10/16/18   Entered 10/17/18 09:23:48   Desc
Main Document    Page 10 of 12

- EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN YOU AND US DECIDED BY ARBITRATION, AND NOT BY A COURT OR BY JURY TRIAL.
- YOU GIVE UP ANY RIGHT THAT YOU MAY HAVE TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER IN ANY CLASS ACTION OR CLASS ARBITRATION AGAINST US IF A DISPUTE IS ARBITRATED.
- IN ARBITRATION, DISCOVERY AND RIGHTS TO APPEAL ARE GENERALLY MORE LIMITED THAN IN A JUDICIAL PROCEEDING, AND OTHER RIGHTS THAT YOU WOULD HAVE IN COURT MAY NOT BE AVAILABLE.

You or we (including any assignee) may elect to resolve any Claim by neutral, binding arbitration and not by a court action. "Claim" means any claim, dispute or controversy between you and us or our employees, agents, successors, assigns or affiliates arising from or relating to:

1. the credit application;
2. the purchase of the Property;
3. the condition of the Property;
4. this Contract;
5. any insurance, maintenance, service or other contracts you purchased in connection with this Contract; or
6. any related transaction, occurrence or relationship.

This includes any Claim based on common or constitutional law, contract, tort, statute, regulation, or other ground. To the extent allowed by law, the validity, scope, and interpretation of this arbitration provision are to be decided by neutral, binding arbitration.

If either party elects to resolve a Claim through arbitration, you and we agree that no trial by jury or other judicial proceeding will take place. Rather, the Claim will be arbitrated on an individual basis, and not on a class or representative basis.

The party electing arbitration may choose any of the following arbitration organizations and its applicable rules, provided it is willing and able to handle the arbitration: American Arbitration Association, 1633 Broadway, Floor 10, New York, NY 10019 (www.adr.org); JAMS, 1920 Main Street, Suite 300, Irvine CA 92614 (www.jamsadr.com); or National Arbitration and Mediation (NAM), 990 Stewart Ave., Garden City, NY 11530 (www.namadr.com). You may get a copy of the applicable rules of these organizations by contacting them or visiting their websites. If the chosen arbitration organization's rules conflict with this arbitration provision, then the terms of this arbitration provision will govern the Claim. If none of these arbitration organizations is willing or able to handle the arbitration, the arbitrator can be selected pursuant to 9 U.S.C. Sections 5 and 6.

The arbitration hearing will be carried out in the federal district where you reside, unless you and we otherwise agree. Or, if you and we consent, the arbitration hearing can be by telephone. In connection with any arbitration, if you so request, we shall advance your filing, administration, service or case management fee and your arbitrator or hearing fee, up to a total of $2,500.00. Unless the arbitrator awards them to a party, each party is responsible for the fees of its attorneys, experts, witnesses, and any other fees or costs, including any amount we have advanced.

An arbitrator must be a lawyer with at least ten (10) years experience and familiar with consumer credit law or a retired state or federal court judge. Except as provided below, the arbitration will be by a single arbitrator. In making an award, an arbitrator shall follow governing substantive law and any applicable statute of limitations. The arbitrator will decide any dispute regarding the arbitrability of a Claim. An arbitrator has the authority to order specific performance, compensatory damages, punitive damages, and any other relief allowed by applicable law. An arbitrator's authority to make awards is limited to awards to you or us alone. Furthermore, Claims brought by you against us, or by us against you, may not be joined or consolidated in arbitration with claims brought by or against someone other than you, unless agreed to in writing by all parties. No arbitration award or decision will have any preclusive effect as to issues or claims in any dispute with anyone who is not a named party to the arbitration.

Any arbitration award shall be in writing, shall include a written reasoned opinion, and will be final and binding subject only to any right to appeal under the Federal Arbitration Act ("FAA"), 9 U.S.C. Sections 1, et seq., except that (i) if a single arbitrator awards you less than $5,000 you shall be entitled, upon request made within 20 days after the entry of that award, to have the award set aside and the Claim rearbitrated by a panel of three arbitrators, and (ii) if the single arbitrator awards you more than $100,000 we shall be entitled, upon request made within 20 days after the entry of that award, to have the award set aside and the Claim rearbitrated by a panel of three arbitrators. The party requesting such rearbitration will be required to pay the filing, administration, service or case management fee and the arbitrators and hearing fee, subject to final determination by the arbitration panel. Any court having jurisdiction can enforce a final arbitration award.

You or we can do the following without giving up the right to require arbitration:
- Seek remedies in small claims court for Claims within the small claims court's jurisdiction, or
- Seek judicial provisional remedies.

If a party does not exercise the right to elect arbitration in connection with any particular Claim, that party still can require arbitration in connection with any other Claim.

This arbitration provision survives any (i) termination, payoff, assignment or transfer of this Contract, (ii) any legal proceeding by you or us to collect a debt owed by the other, and (iii) any bankruptcy proceeding in which you or we are the debtor. With but one exception, if any part of this arbitration provision is deemed or found to be unenforceable for any reason, the remainder of this arbitration provision will remain in full force and effect. The one exception is that, if a finding of partial unenforceability would allow arbitration to proceed on a class-wide basis then this arbitration provision will be unenforceable in its entirety.

You and we expressly agree that this arbitration provision is governed by the FAA to the exclusion of any different or inconsistent state or local law.

By signing this Contract you are agreeing to the terms of this arbitration provision, unless you reject it as provided in the next paragraph.

Caution: It is important that you read this arbitration provision thoroughly before you sign this Contract. By signing this Contract, you are acknowledging that you have read and understand this arbitration provision. If you do not understand something in this arbitration provision, do not sign this Contract; instead ask your lawyer. You can reject this arbitration provision by checking the box in the *Rejection of Arbitration* section of this Contract before you sign this Contract. If you do so, this arbitration provision will not be a part of this Contract, but all the rest of this Contract will continue to be binding and effective.

## Notices

Note. If the primary use of the Vehicle is non-consumer, this is not a consumer contract, and the following notice does not apply. **NOTICE. ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

If you are buying a used vehicle: The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.

Sí compra un vehículo usado: La información que ve adherida en la ventanilla forma parte de éste contrato. La información contenida en el formulario de la ventanilla prevalece por sobre toda otra disposición en contrario incluida en el contrato de compraventa.

## Third Party Agreement

In this section only, "you" means only the person signing this section.

By signing below you agree to give us a security interest in the Property described in the *Description of Property* section. You also agree to the terms of this Contract except that you will not be liable for the payments it requires. Your interest in the Property may be used to satisfy the Buyer's obligation. You agree that we may renew, extend or change this Contract, or release any party or Property without releasing you from this Contract. We may take these steps without notice or demand upon you.

**You acknowledge receipt of a completed copy of this Contract.**

N/A
_____
By:                                                                Date

*[This area intentionally left blank.]*

Retail Installment Contract-AZ Not for use in transactions secured by a dwelling.
Bankers Systems™
Wolters Kluwer Financial Services © 1995, 2010

RSSIMVLFAZAZ 6/8/2012
Page 5 of 6

Case 2:18-bk-09274-MCW    Doc 22    Filed 10/16/18    Entered 10/17/18 09:23:48    Desc
Main Document    Page 11 of 12

## Signature Notices

The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this Contract and retain its right to receive a part of the Finance Charge.

Arbitration. This Contract contains an Arbitration Provision that affects your rights.

## Signatures

Entire Agreement. Your and our entire agreement is contained in this Contract. There are no unwritten agreements regarding this Contract. Any change to this Contract must be in writing and signed by you and us.

X _[signature]_           3/11/2016
By: Tessa Lit         Date

By: _____ Date

By: _____ Date

[This area intentionally left blank.]

---

Notice to the Buyer. 1. Do not sign this Contract before you read it or if it contains any blank spaces. 2. You are entitled to an exact copy of the Contract you sign.

By signing below, you agree to the terms of this Contract. You received a copy of this Contract and had a chance to read and review it before you signed it.

**THE INSURANCE SHOWN IN THE INSURANCE DISCLOSURES SECTION OF THIS CONTRACT DOES NOT INCLUDE LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS UNLESS SUCH INSURANCE IS SPECIFICALLY PROVIDED FOR IN THAT SECTION.**

Buyer

X _[signature]_     3/11/2016
By: Tessa Lit     Date

By: _____ Date

By: _____ Date

Seller

_[signature]_     3/11/2016
By: Go Auto Sales LLC     Date

We are regulated by the Arizona Department of Financial Institutions. Any complaints you have concerning this Contract may be addressed to the Arizona Department of Financial Institutions, 2910 North 44th Street, Suite 310, Phoenix, Arizona 85018; Telephone (602) 255-4421.

---

Assignment. This Contract and Security Agreement is assigned to _____
Nevada West Financial
PO Box 94703 Las Vegas NV 89193 , the Assignee, phone
_____. This assignment is made under the terms of a separate agreement made between the Seller and Assignee. ☐ This Assignment is made with recourse.

Seller

_[signature]_     3/11/2016
By: Go Auto Sales LLC     Date

Retail Installment Contract-AZ Not for use in transactions secured by a dwelling.
Bankers Systems™
Wolters Kluwer Financial Services © 1995, 2010

X  RSSIMVLFAZAZ 6/8/2012
Page 6 of 6

Case 2:18-bk-09274-MCW    Doc 22    Filed 10/16/18    Entered 10/17/18 09:23:48    Desc
Main Document    Page 12 of 12